IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.    1:20-CR-199 (LEK) (DJS) |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL T. MANN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| PIONEER BANK, | ) | |
| | ) | |
| Third-Party Claimant. | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO PIONEER'S OBJECTIONS TO**

**JUDGE STEWART'S REPORT-RECOMMENDATION AND ORDER**

## Table of Contents

Introduction ..................................................................................................................1

Factual and Procedural Summary .................................................................................2

    A.  Michael Mann's Criminal Conduct ...............................................................2

    B.  Mann's Guilty Plea and the Preliminary Order of Forfeiture .......................4

    C.  Third Party Claims ........................................................................................5

Applicable Law and Legal Standards ...........................................................................7

    A.  Criminal Forfeiture .......................................................................................7

        1.  A petitioner must have Article III and statutory standing to contest
           forfeiture ................................................................................................8

        2.  Only two categories of interests are superior to the Government's interest in
           forfeitable property ................................................................................9

    B.  Legal Standard for a Motion to Dismiss .....................................................10

    C.  Legal Standard for Review of an R&R ........................................................12

Argument .....................................................................................................................13

Conclusion ..................................................................................................................20

## Introduction

The Government respectfully responds to Pioneer Bank's memorandum of law, dated October 28, 2022 (dkt. no. 135), objecting to the Report-Recommendation and Order ("R&R") of United States Magistrate Judge Daniel J. Stewart, dated October 14, 2022 (dkt. no. 132). Pioneer's objections should be overruled because Judge Stewart correctly concluded that Pioneer's Second Claim should be dismissed.

Pioneer seeks all of the funds that the Government has seized from defendant Michael T. Mann ("Mann") – $14,522,474.90, formerly contained within three Bank of America accounts – as well as 30,000 shares of Pioneer stock that the Government also seized from Mann. In pleading guilty, Mann agreed to forfeit these assets to the Government, and the Court has entered a Preliminary Order of Forfeiture in the Government's favor. Dkt. no. 35.

The Government intends to arrange for these assets to be distributed to Mann's victims, of which Pioneer is one. Pioneer has other designs – it seeks all of these assets for itself, leaving Mann's other victims without any hope of recovering even a small percentage of what they lost.

In his R&R, as further discussed below, Judge Stewart recommended the denial of the Government's motion to dismiss as to Pioneer's First Claim for relief, and recommended a hearing on that claim.[1] Judge Stewart recommended that the Government's motion be granted as to Pioneer's Second Claim. Pioneer objects to that second recommendation by memorandum dated October 28, 2022 (hereinafter, "Objections"), and the Government, by this brief, opposes that objection.

---

[1] The Government respectfully disagrees with this recommendation, but did not object to it.

1

Pioneer's Objections are a rehash of arguments it unsuccessfully made to Judge Stewart, combined with irrelevant and incredible statements to the effect that it had no knowledge of Mann's fraud. Pioneer concedes that it failed to perfect its claimed security interest in the Subject Assets, which means (i) its interest is subordinate to that of the Government, (ii) it lacks standing and fails to state a claim, and (iii) a hearing on the Second Claim would be pointless. For these reasons, as further discussed below, Judge Stewart did not clearly err in recommending the dismissal of the Second Claim.

To the extent Judge Stewart's R&R could be read to recommend that the Second Claim be dismissed only for lack of standing, the Government respectfully suggests – consistent with its arguments to Judge Stewart[2] – that this Court modify that recommendation by also holding that the Second Claim be dismissed for failure to state a claim.

### Factual and Procedural Summary

A. **Michael Mann's Criminal Conduct**[3]

Mann owned and operated ValueWise Corporation ("ValueWise") and subsidiary companies based in Clifton Park, New York. From at least 2013 through September 2019, Mann perpetrated a massive scheme to defraud that caused more than $100 million in actual losses.

Mann fraudulently obtained millions of dollars in loans from a total of three (3) Financing Companies. He told the Financing Companies that several of his companies provided

---

[2] See dkt. no. 65-1 at pp. 17-21; dkt. no. 102 at pp. 4-8.

[3] These facts are taken from Mann's plea agreement ("Mann PA," dkt. no. 30), to which Pioneer's petition repeatedly refers. Although Pioneer's petition does not specifically incorporate the Mann plea agreement by reference, the Court can still consider it on a motion to dismiss because Pioneer repeatedly cites and refers to it. *See Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

services to UnitedHealth Group Incorporated ("UHG") and its subsidiary, OptumInsight Inc. ("Optum"), and as a result had receivables due and owing from UHG/Optum. Mann persuaded the Financing Companies to loan his companies millions of dollars against these non-existent receivables. The Financing Companies suffered a combined $17,100,204.50 in losses as a result of Mann's fraud.

Mann perpetrated a similar scheme against Pioneer and its lending partners ("the Banks"). He fraudulently obtained a line of credit ("LOC"), which grew to $42 million as of August 12, 2019, by lying about his companies' revenues, receivables, and other assets, and by disguising his companies' true sources of funds (e.g. the Financing Companies) and the fact that he was using the LOC to pay down the loans from the Financing Companies. The Banks suffered a combined $35,839,912.81 in losses as a result of Mann's fraud.

Mann also defrauded, among others:

- Bank of America ("BANA"), by fraudulently obtaining corporate credit cards for employees of ValueWise and several of its subsidiaries, resulting in $850,545.00 in losses to the bank.

- Cachet Financial Services, an Automated Clearing House ("ACH") processor, by fraudulently diverting payroll monies into accounts that he maintained at Pioneer. Pioneer then froze these monies once Mann's fraud came to light, and Cachet ended up paying a total of approximately $7,219,341.34 to the employees of MyPayrollHR.com LLC's customers. Mann also abused his companies' access to the ACH services provided by Cachet, using those services to rapidly transfer (a/k/a "kite") millions of dollars among his accounts at Pioneer and BANA. Cachet lost an additional $19,199,175.74 because, on August 30, 2019, it used its own trust account

3

monies to effect rapid transfers of funds at Mann's instruction, and was not able to debit these monies from Mann's accounts at Pioneer and BANA, which had been frozen.

- National Payment Corporation ("NatPay"), by fraudulently diverting tax monies into accounts that he maintained at Pioneer. Pioneer then froze these monies once Mann's fraud came to light, and NatPay ended up paying a total of approximately $3,835,425.69 to taxing authorities on behalf of Mann's customers.

- Southwestern Payroll Service, Inc. ("Southwestern Payroll"), by fraudulently diverting tax monies into accounts that he maintained at Pioneer. Pioneer then froze these monies once Mann's fraud came to light, resulting in at least $16,994,188.24 in losses.

### B. Mann's Guilty Plea and the Preliminary Order of Forfeiture

Mann pled guilty, on August 12, 2020, to a 12-count information charging conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349, 1343 (Count 1); aggravated identity theft, in violation of 18 U.S.C. § 1028A (Count 2); bank fraud, in violation of 18 U.S.C. § 1344 (Counts 3 through 11); and filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count 12).

Mann agreed to pay $101,038,793.31 in restitution to his victims, and to forfeit, as proceeds of his fraud crimes, the following:

- Bank of America account bearing an account number ending in 9506
  ("9506 Account")
  Account holder: ValueWise Corporation d/b/a Primacy Search Group
  Balance: $1,444,975.16

- Bank of America account bearing an account number ending in 6843
  ("6843 Account")

4

Account holder: ValueWise Corporation d/b/a Optix Consulting
Balance: $5,363,936.77

- Bank of America account bearing an account number ending in 6103
  ("6103 Account")
  Account holder: Heutmaker Business Advisors LLC
  Balance: $7,713,562.99

- 30,000 common shares of Pioneer Bancorp Inc., owned by MyPayrollHR.com LLC
  ("Pioneer Shares")

- Vehicle – a 2020 Jeep Gladiator, color black, Vehicle Identification Number
  1C6HJTFG4LL115264

- A money judgment in the amount of $101,038,793.31.

On August 26, 2020, the Court entered a Preliminary Order of Forfeiture. Dkt. no. 35.

On August 12, 2021, the Court sentenced Mann to 144 months in prison. Dkt. no. 98.

### C. Third Party Claims

Two victims have brought third-party petitions seeking turnover of certain of the seized

assets.

On May 13, 2021, Cachet filed a petition, pursuant to 21 U.S.C. § 853(n)(2), claiming all

of the funds in the 6843 Account and the 6103 Account, totaling $13,077,499.80. Dkt. no. 51.

Cachet asserts that these funds are Cachet's, specifically that these funds are traceable to monies

that Mann fraudulently caused it to send to the 6843 Account and the 6103 Account. Judge

Stewart's R&R recommended the denial of the Government's motion to dismiss Cachet's

petition. The Government respectfully disagrees with this recommendation, but did not object to

it.

On May 14, 2021, Pioneer filed a petition, pursuant to 21 U.S.C. § 853(n)(2), claiming

all of the funds in the 9506 Account, the 6843 Account and the 6103 Account (collectively, the

"Subject Accounts"), totaling $14,522,474.90, as well as the Pioneer Shares (with the Subject

5

Accounts, the "Subject Assets"). Dkt. no. 54. Pioneer alleged (1) that it is a bona-fide purchaser

for value of a "property interest/security interest" in the funds within the Subject Accounts as a

result of Mann's checking kiting scheme (hereinafter, "Pioneer's First Claim"), and (2) that it is

a bona-fide purchaser for value of all of the Subject Assets, pursuant to an August 12, 2019

Loan and Security Agreement it had with ValueWise and affiliates ("Pioneer's Second Claim").

On June 28, 2021, the Government moved to dismiss Pioneer's petition for lack of standing and

failure to state a claim. Dkt. nos. 65, 102. As to Pioneer's First Claim, the Government sought

its dismissal because Pioneer has already satisfied its claim by seizing more than $15 million

from Mann's accounts at Pioneer and Pioneer failed to sufficiently claim an interest in the

Subject Accounts based on alleged money transfers. As to Pioneer's Second Claim, the

Government sought its dismissal because Pioneer has failed to allege that it has a perfected

security interest in the Subject Assets that is superior to the Government's interest.

In his R&R, Judge Stewart recommended the rejection of the Government's motion to

dismiss as to Pioneer's First Claim. In doing so, however, he noted:

> The points raised by the Government in this Court's view raise serious questions
> about Pioneer's ability to meet [its] ultimate burden [of proof]. Given the legal
> standard applied to dismissal motions and the fact that a hearing is warranted with
> respect to Cachet's Amended Petition, the Court recommends that the most
> judicious course here is to direct a hearing on Pioneer's claim as well and put it to
> its burden of proof.

R&R p. 27 n.9. Judge Stewart then analyzed Pioneer's Second Claim, and recommended

its dismissal. Judge Stewart agreed with the Government that Pioneer had failed to allege

a perfected security interest in the Subject Assets that would be superior to the

Government's interest:

> Pioneer's legal interest here is asserted by virtue of the collateral agreement it
> entered with the Borrower, which purported to give it a security interest in 'any

6

and all' personal property belonging to the Borrower, including 'deposit accounts.' Pet. at ¶ 36. Pioneer alleges that it purchased [footnote omitted] an interest in the Borrower's assets in exchange for valuable consideration given, namely, the extension of a $42 million line of credit. Pioneer further alleged that it took this interest in good faith and without notice of competing claims. Pioneer Pet. at ¶¶ 46-47. Per its own admission, however, Pioneer never perfected its security interest in any of the assets in question.  Dkt. No. 80, Pet.'s Mem. of Law at pp. 20-21. Rather, it alleges that when the Borrower defaulted,  it 'acquired the right to take possession of the collateral.'  Pioneer Pet. at ¶ 48. According to the Government this failure to perfect the interest precludes Pioneer's claim and its entitlement to a hearing under § 853(n). Dkt. No. 102, Govt.'s Reply Mem. of Law at pp. 6-7 [footnote omitted].  The Court agrees that the failure to perfect the security interest deprives Pioneer of standing on this claim.

R&R p. 29. Pioneer then filed its Objections on October 28, 2022, to which the Government now responds.

## **Applicable Law and Legal Standards**

### A. **Criminal Forfeiture**

Fraud proceeds are subject to forfeiture to the United States.  18 U.S.C. § 981(a)(1)(C) (incorporating 18 U.S.C. § 1956(c)(7) (in turn incorporating 18 U.S.C. § 1961(1))).  The Government may seek, and the Court must order, the forfeiture of such property in a criminal case involving fraud crimes that give rise to forfeiture.  28 U.S.C. § 2461(c). The procedures for criminal forfeiture are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2.  28 U.S.C. § 2461(c).

When property is subject to forfeiture to the United States, title to such property vests in the United States upon the commission of the criminal acts giving rise to forfeiture.  18 U.S.C. § 981(f); *see also* 21 U.S.C. § 853(c).  Under this principle, known as the relation-back doctrine, "the government's interest in the proceeds of a fraud vests as soon as those proceeds come into existence, and is therefore superior to that of any subsequent third-party recipient of those

funds." *United States* v. *Daugerdas*, 892 F.3d 545, 548 (2d Cir. 2018). In other words, "any proceeds that ensue from the criminal act belong to the government from the moment that they come into existence." *Watts* v. *United States*, 786 F.3d 152, 167 (2d Cir. 2015). Accordingly, the Government's interests in forfeitable property trump those of any interests that are subsequently acquired (other than those of a bona-fide purchaser).

      1.  <u>A petitioner must have Article III and statutory standing to contest forfeiture</u>

A third party, referred to by statute as a petitioner, may contest the Government's forfeiture of property in a criminal case through an ancillary proceeding. *See* 21 U.S.C. § 853(n); Fed. R. Crim. Pro. 32.2(c).

To establish Article III standing, a petitioner must show an "actual or imminent injury – not a hypothetical, conjectural, or abstract injury." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

In order to state a cognizable claim in the ancillary proceeding, a petitioner must assert a "legal interest" in the forfeitable property. 21 U.S.C. § 853(n)(2). This requirement is often referred to as statutory standing. *See, e.g.*, *United States* v. *Lin Hu*, No. 08-cr-425 (BMC), 2011 WL 5884918, at *3 (E.D.N.Y. Nov. 23, 2011) (unpub.) ("The Second Circuit has interpreted this language as a statutory standing requirement which prevents a claimant from petitioning the court under § 853(n)(2) unless the claimant can demonstrate the requisite legal interest in the forfeited assets") (internal citation omitted). The legal interest  must relate to specific, forfeitable property. By contrast, a petitioner who fails to state an interest in specific assets, but rather propounds interests that amount to generalized claims against the defendant, such as an unsecured creditor, lacks standing to pursue a claim in the ancillary proceeding. *See DSI Assocs.*

*LLC* v. *United States*, 496 F.3d 175, 184 (2d Cir. 2007); *United States* v. *Ribadeneira*, 105 F.3d 833, 835-36 (2d Cir. 1997).

A third-party petition must "set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3).

> 2.  Only two categories of interests are superior to the Government's interest in forfeitable property

Once a party demonstrates statutory standing, it can overcome the Government's criminal forfeiture of property by demonstrating that it falls within one of two categories:

> (A)     the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property . . .; or
>
> (B)     the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . . 21 U.S.C. § 853(n)(6).

A third party qualifies under 6(B) if it acquired its interest after the offense. In that situation, a claimant must show that it is a bona-fide purchaser for value (hereinafter, a "BFP") in order to succeed.  Federal law determines whether a petitioner has a BFP interest sufficient to overcome forfeiture, whereas a property interest itself it defined by state law. *Willis Mgmt. (Vermont), Ltd.* v. *United States*, 652 F.3d 236, 242 (2d Cir. 2011).

The third-party petitioner bears the burden of proving its interest by a preponderance of the evidence.  *See* 21 U.S.C. § 853(n)(6). If the petitioner cannot meet the requirement of either paragraph 6(A) or 6(B), it simply cannot demonstrate an interest in property subject to forfeiture. *See, e.g., United States* v. *Hooper*, 229 F.3d 818, 822-23 (9th Cir. 2000) (given the clear direction in section 853(n)(6) limiting recovery to two categories of claimants, courts are not at liberty to create additional grounds for relief); *United States* v. *Kennedy*, 201 F.3d 1324, 1335 (11th Cir. 2000) (alternative grounds set forth in sections 853(n)(6)(A) and (B) are the only grounds for recovery in ancillary proceedings).

**B.  Legal Standard for a Motion to Dismiss**

An ancillary proceeding, although occurring in the context of criminal forfeiture, closely resembles a civil action.  *See Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004)) (citing Advisory Committee notes to Federal Rule of Criminal Procedure 32.2, subdivision (c), which explain that because ancillary hearings may involve complex issues requiring years to resolve, "procedures akin to those available under the Federal Rules of Civil Procedure should be available to the court and the parties to aid in the efficient resolution of the claims").

Therefore, the Government may move to dismiss a petition for lack of standing or for failure to state a claim.  Rule 32.2(c)(1)(A) provides that in "the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." *See also*, *e.g.*, *United States v. Swartz*, 391 F. Supp.3d 199 (N.D.N.Y. 2019) (dismissing petition for failure to state a plausible claim).

The familiar standard applicable to a motion to dismiss is set forth in the Supreme Court's decisions in *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp.* v. *Twombly*,

550 U.S. 544 (2007).  A Rule 12(b)(6) motion to dismiss should be granted if the complaint does

not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *accord Twombly*,

550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the

speculative level, … on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Twombly*, 550 U.S. at 555.

The Court need not, however, accept as true a legal conclusion or a legal conclusion

couched as a factual allegation.  *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Ultimately, whether a complaint states a plausible claim for relief is a context-specific

determination that requires "the reviewing court to draw on its judicial experience and common

sense," and only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Iqbal*, 556 U.S. at 679.

In determining whether a petition in an ancillary proceeding states a claim, the court must

assume its allegations to be true.  *See* Fed. R. Crim. P. 32.2(c)(1)(A).  A petitioner is therefore

bound by the allegations in its complaint.  *See Official Comm. of Unsecured Creditors of Color*

*Tile, Inc.* v. *Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Soo Line R.R.*

*Co.* v. *St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997)) ("'[P]laintiff can plead

himself out of court by alleging facts which show that he has no claim, even though he was not

required to allege those facts,' and 'judicial efficiency demands that a party not be allowed to

controvert what it has already unequivocally told to a court by the most formal and considered

means possible'"); *see also Jones* v. *Bock*, 549 U.S. 199, 215 (2007) ("[i]f the allegations [in a

11

complaint], for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

Additionally, the Court may consider not only the facts alleged in the petition, but also "documents attached as exhibits or incorporated by reference in the [petition] and matters of which judicial notice may be taken." *Samuels* v. *Air Trans. Local,* 992 F.2d 12, 15 (2d Cir. 1993)*; see also Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effects of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [the Court] may consider its contents even if it is not formally incorporated by reference") (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

### C. Legal Standard for Review of an R&R

As this Court has noted:

> Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party 'may serve and file specific, written objections to the proposed findings and recommendations.' Fed. R. Civ. P. 72(b); see also L.R. 72.1(c). A court 'shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.' 28 U.S.C. § 636(b)(1). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. …
>
> [I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not. … 'A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' § 636(b).

*Elleby v. Martingano*, 20-cv-0693 (LEK), 2022 U.S. Dist. LEXIS 569, *2-3 (N.D.N.Y. Jan. 3, 2022) (internal quotations and citations omitted). *See also Farid v. Bouey*, 554

F.Supp.2d 301, 306 n. 2 (N.D.N.Y.2008); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 42

(N.D.N.Y. 2009) ("[D]e novo review of a magistrate's Report and Recommendation is

not warranted by objections that simply attempt to engage the district court in a rehashing

of the same arguments set forth in the original petition") (internal quotations, citation

omitted).

### <u>Argument</u>

The Second Claim fails because Pioneer failed to allege that it has a perfected security

interest in the Subject Assets that would be superior to the Government's interest. And Pioneer

concedes that its "interest was secured but simply unperfected." Pioneer Objections at p. 2.

As an initial matter, because of the relation-back doctrine, the Government succeeds to

the interest Mann had in the Subject Assets. *See*, *e.g.*, *United States v. Ida*, 14 F. Supp. 2d 454,

459 (S.D.N.Y. 1998) ("[t]he effect of a verdict of forfeiture therefore is to put the Government in

the shoes of the defendant"); *United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001) (criminal

forfeiture puts the Government in the shoes of the defendant, "acquiring only the rights of the

defendant at the time of the criminal acts, and nothing more").

The question then becomes whether Pioneer has an interest in the Subject Assets that is

superior to the Government's. Pioneer asserts that the August 12, 2019 Loan and Security

Agreement made it a BFP – that is, a good-faith purchaser of a security interest in the Subject

Assets that acquired its rights after the fraud began and the Government's interest vested.  But

Pioneer, by failing to perfect its security interest, lacks BFP status, and has an interest in the

Subject Assets (deposit accounts and investment property) that is inferior to the Government's as a matter of law.[4]

A security interest in a deposit account "may be perfected only by control" of the account. N.Y. UCC §§ 9-312(b)(1), 9-314(a). *See also* N.Y. UCC § 9-104 (a)(1) (bank with which deposit account is maintained has control); *Wachovia Bank Nat'l Ass'n v. Encap Golf Holdings*, LLC, 690 F. Supp. 2d 311, 338 n. 6 (S.D.N.Y. 2010).

A security interest in investment property may be perfected by the filing of a financing statement, or by control of the property. N.Y. UCC §§ 9-312(a), 9-314(a). *See also Citigroup Glob. Markets, Inc. v. KLCC Invs., LLC*, 06-cv-5466 (LAP), 2015 WL 5853916, at *11 (S.D.N.Y. Sept. 28, 2015) (unpub.).

Pioneer alleges that it holds a security interest in any and all assets of the companies that signed the August 12, 2019 Loan and Security Agreement; these companies include ValueWise and Heutmaker Business Advisors LLC, the holders of the Subject Accounts, and MyPayrollHR.Com LLC, the owner of the Pioneer Shares.

Pioneer does not, however, allege that it has perfected its security interest in either the Subject Accounts or the Pioneer Shares. Pioneer's Second Claim fails because of choices it made. Pioneer either chose not to perfect its security interest in the Subject Assets, or was simply negligent and forgot to do so. The August 12, 2019 Loan and Security Agreement contemplates that Pioneer would perfect its security interest, *see* Pioneer Petition, Exhibit C (dkt. no. 54-3) at ¶ 7.10 ("Further Assurances"), and Pioneer was plainly aware of the BANA accounts because

---

[4] Pioneer concedes that it failed to perfect its security interest. Pioneer Objections at p. 2. Its discussion of its efforts to file UCC financing statements, and obtain a default judgment against Mann's companies, *see, e.g.,* Pioneer Objections at p. 3 n. 1, p. 13 n. 6, all after the fraud was discovered, serve to only underscore the unperfected nature of its security interest.

Mann was transferring money between his Pioneer and BANA accounts. Pioneer, a sophisticated party, offers no explanation as to why it failed to perfect its security interest.

Accordingly, even if Pioneer has a security interest in the Subject Assets, its interest would still be inferior to the Government's, and should be dismissed as a matter of law. Judge Rakoff reached this holding in *United States v. Chowaiki*, 369 F. Supp. 3d 565, 575 (S.D.N.Y. 2019). In that case, multiple parties asserted interests in a Picasso painting, *Le Clown*. On the Government's motion to dismiss, Judge Rakoff found that although a third-party claimant sufficiently asserted a security interest in *Le Clown* that could make it a BFP, the claimant acknowledged that it did not have physical possession of the painting at the time the Government seized it, and failed to allege that it either perfected or recorded its security interest.

Judge Rakoff granted the Government's motion to dismiss, finding that "[t]he Government's interest in forfeited property is 'something like [that of] a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party'" (quoting *Luis v. United States*, 136 S. Ct. 1083, 1092, (2016)); *see also* N.Y. UCC § 9-322 (a)(3) (secured creditor has priority over subsequent, unperfected security interests). In other words, the Government had priority over a creditor with a secured but unperfected interest in the property sought to be forfeited. *Accord Ribadeneira*, 105 F.3d at 836 (affirming the district court's observation that the claimant was not a BFP "'unless they have already secured a judgment against the debtor and perfected a lien against a particular item'") (quoting *United States v. Ribadeneira*, 920 F. Supp. 553 (S.D.N.Y. 1996)); *United States v. Madoff*, 09-cr-213 (DC), 2012 WL 1142292, *5 (S.D.N.Y. April 3, 2012) (unpub.) (dismissing law firm's BFP claim over seized funds because it failed to perfect its lien); *United States v. One 1987 Cadillac DeVille*, 774 F. Supp. 221, 223-24 (D. Del. 1991) (granting summary judgment in civil forfeiture action,

15

concluding that unperfected security interest in car was insufficient to defeat forfeiture); *United States v. One 1965 Cessna 320C Twin Engine Airplane*, 715 F. Supp. 808 (E.D. Ky. 1989) (granting summary judgment in civil forfeiture action, concluding that unperfected security interest in airplane was insufficient to defeat forfeiture).[5]

Pioneer misinterprets and downplays *Chowaiki*, which is on point because it rejected a claim to BFP status by a party claiming only an unperfected security interest, as follows:

> Nowhere in its petition does [petitioner] KS allege that it perfected or recorded its security interest. Thus, the dispositive question is whether an unperfected security interest can trump the Government's interest in previously-forfeited goods. The Court concludes that it cannot. …
>
> Taking all facts alleged in its petition as true, KS has at most an unperfected security interest in the Work that post-dates the vesting of the Government's interest. Such an interest is not enforceable against the Government. Accordingly, KS's petition is hereby dismissed for failure to state a claim upon which relief can be granted.

*Chowaiki*, 369 F. Supp. 3d at 574-575. Judge Rakoff thus held that KS's security interest in the Work, which postdated the Government's interest in "previously-forfeited goods" (because of the relation-back doctrine), was insufficient to make it a BFP, because that security interest was unperfected. *Chowaiki* is recent, persuasive precedent and is fatal to the Second Claim. Also, contrary to Pioneer's claims, *see* Pioneer Objections at p. 8, *Chowaiki* is far from the only case supporting the Government's position, as demonstrated by the other cases cited herein.

Pioneer principally cites *U.S. v. Huntington Nat. Bank*, 682 F.3d 429, 434 (6th Cir. 2012) in support of its claim to priority BFP status. *Huntington Nat. Bank* found that BFP status could

---

[5] The Delaware and Kentucky cases involved security interests in property acquired prior to the events giving rise to forfeiture, akin to claims made pursuant to § 853(n)(6)(A). But the analysis is the same – because the petitioner had only an unperfected security interest, acquired pre-fraud, it could not defeat the Government's forfeiture of the property.

be predicated on a security interest in a bank account, but it dealt with a single account over which the claimant (Huntington) had control and, thus, a perfected security interest. *See id*. at 432 (noting that Huntington asserted a claim to Huntington Bank Account Number XXXXXXX0935); *U.S. v. Huntington Nat'l Bank*, 574 F.3d 329, 330 (6th Cir. 2009) (prior court of appeals decision involving the same litigation, which noted that "Huntington filed a claim, alleging that a perfected security interest permitted it to retain the account"); *see also* N.Y. UCC §§ 9-312(b)(1), 9-314(a) (a security interest in a deposit account "may be perfected only by control" of the account).

Pioneer's unperfected security interest is exceedingly weak, and makes it more like a general, unsecured creditor (which, as a rule, do not enjoy BFP status). *See*, *e.g.*, N.Y. UCC § 9-317(a)(2)(A) ("A security interest … is subordinate to the rights of … a person that becomes a lien creditor before the earlier of the time the security interest … is perfected"). Also, Pioneer's discussion of UCC § 9-203 ignores that its security interest, as alleged, fails to satisfy the enforceability provision set forth in UCC § 9-203(b)(3):

> (b) Enforceability. Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>> (1) value has been given;
>> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>> (3) one of the following conditions is met:
>>> (A) the debtor has authenticated a security agreement that provides a description of the collateral …;
>>> …
>>> (D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under Section 7-106, 9-104, 9-105, 9-106, or 9-107 pursuant to the debtor's security agreement.

This provision mandates a description of the collateral, whereas the BANA accounts are nowhere specified in the documents Pioneer has submitted to the Court; the provision alternatively specifies that when collateral is "deposit accounts," the secured party must have control (which Pioneer does not). Section 203, moreover, says nothing about what happens when another party (e.g. the Government) has an earlier and superior interest in deposit accounts. *See*, *e.g.*, *Matter of 140 W. 57th St. Bldg. LLC v Russ*, *Teddy Bear Invs., LLC*, Index No. 162424/2014, 2016 N.Y. Misc. LEXIS 141 (N.Y. Sup. Ct. January 13, 2016) (party did not have priority over funds in a deposit account where it failed to perfect its security interest in that account). Tellingly, none of the cases cited by Pioneer, involving UCC § 9-203, involves deposit accounts.

Claiming BFP status arising from an unperfected security interest, Pioneer relies on *United States v. Dupree*, 919 F. Supp.2d 254, 269 (E.D.N.Y. 2013), which does not actually help its cause. The arguably relevant part of *Dupree* involved a motion to dismiss brought by a third-party petitioner (the "Watts Petitioners") against another third-party petitioner ("Amalgamated"); the Government was not involved in this motion. The court found that "the Amalgamated Petition sufficiently asserts an interest in particular assets to confer standing upon Amalgamated to pursue its claim in the ancillary proceeding," *Dupree*, 919 F. Supp.2d at 277, but it never discussed whether Amalgamated had a perfected or an unperfected security interest, and that distinction certainly did not factor into the court's holding.[6] Pioneer assumes that Amalgamated had an unperfected security interest because it sought turnover of accounts at another institution (Chase), but in fact the court stated the opposite – that, as alleged, Amalgamated had a "duly **perfected** first-priority lien on the Collateral." *Dupree*, 919 F. Supp.2d at 277 (internal quotations

---

[6] This is evident from reading the opinion, but also from a simple word search for "perfected" (two results) and "unperfected" (zero results).

omitted, emphasis added).[7] Pioneer has badly misread *Dupree*, which supports the Government's argument that a security interest must be perfected in order to confer BFP status on its holder.

The difference between perfected and unperfected security interests is not superficial. When a creditor has a perfected security interest in bank accounts, for example, it can engage in self-help, and execute on its interest without resort to the courts. A creditor with only an unperfected security interest, by contrast, is more akin to a general, unsecured creditor, because the holder of an unperfected security interest must reduce their claim to a judgment, prior to being able to execute on it. As stated in N.Y. UCC § 9-607, official comment no. 7:

> If a security interest in a deposit account is unperfected … the depositary institution ordinarily owes no obligation to obey the secured party's instructions. See Section 9-341. To reach the funds without the debtor's cooperation, the secured party must use an available judicial procedure.

Finally, to the extent Judge Stewart's opinion could be read to recommend that the Second Claim be dismissed only for lack of standing, the Government respectfully suggests – consistent with its arguments to Judge Stewart[8] – that the Court modify that recommendation by also holding that the Second Claim be dismissed for failure to state a claim. The Court is permitted to affirm the R&R on any basis supported by the record. *See*, *e.g.*, *Joffe v. King & Spalding LLP*, 17-cv-3392 (VEC), 2019 U.S. Dist. LEXIS 164960, *14 (S.D.N.Y. Sept. 15, 2019); *Medrano v. United States*, 06-cr-61 (LTS), 2015 U.S. Dist. LEXIS 97682, *12 (S.D.N.Y.

---

[7] Contrary to Pioneer's understanding, a creditor can have a perfected security interest in accounts even if it does not have custody of those accounts. For instance, Pioneer, as creditor, could have had a perfected security interest in Mann's accounts at BANA had "the debtor [Mann], secured party [Pioneer], and bank [BANA] … agreed in an authenticated record that the bank [would] comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor." N.Y. UCC § 9-104(a)(2).

[8] See dkt. no. 65-1 at pp. 17-21; dkt. no. 102 at pp. 4-8.

July 27, 2015); *City of New York v. Beretta U.S.A. Corp.*, 00-cv-3641 (JBW), 2005 U.S. Dist.

LEXIS 10313, *4 (E.D.N.Y. May 26, 2005) (citing *Richardson v. Selsky*, 5 F.3d 616, 621 (2d

Cir. 1993)).

<u>**Conclusion**</u>

For the foregoing reasons, the Government respectfully asks that the Court accept and

adopt Judge Stewart's recommendation that Pioneer's Second Claim be dismissed. Pioneer's

arguments to this Court are the same arguments made to Judge Stewart, who did not err, much

less clearly err, in holding that Pioneer lacked standing as to its Second Claim. The Second

Claim should also be dismissed for failure to state a claim. There is no point in having a hearing

on Pioneer's Second Claim, because Pioneer has alleged, at best, an unperfected security interest

that is inferior to the Government's interest.

Date: November 21, 2022          CARLA B. FREEDMAN
                                 United States Attorney


                                 By:<u>/s/ Michael Barnett</u>
                                 Michael Barnett
                                 Cyrus P.W. Rieck
                                 Elizabeth A. Conger
                                 Assistant United States Attorneys
                                 Bar Roll Nos. 519140, 518933, 520872